IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
AT SOUTH BEND

CHRISTINA KING
AND
STEPHEN KING
25448 Stanley Park Road
Evergreen, CO 80439

PLAINTIFFS

- VS. -

NEWMAR CORPORATION
c/o Thorne Grodnik, LLP S/A
355 Delaware Street
Nappanee, IN 46550

DEFENDANT

CASE NO.

COMPLAINT AND JURY DEMAND

---

## PRELIMINARY STATEMENT

1. This case involves claims asserted under the Indiana Commercial Code, the Magnuson Moss Warranty Act, and the New Jersey Consumer Fraud Act.

2. Jurisdiction exists with this court because a federal claim exists in which there is more than $50,000 in controversy under 15 USC 2301 et seq, invoking 28 USC 1331, and/or the amount in controversy is more than $75,000 and is between citizens of different states, invoking 28 USC 1332.

3. This case involves a defective 2020 Newmar New Aire model 3543 recreational vehicle that defendant warranted and contracted to warrant but which it was not able to repair within a reasonable number of chances

or a reasonable amount of time and whose warranty and/or contract of warranty defendant breached.

4. The vehicle which is the subject of this dispute was built and warranted by Newmar Corporation, was acquired by Plaintiffs in New Jersey and was defective when acquired and had defects, problems and malfunctions when delivered to Plaintiffs, and ineffective warranty repair attempts were made upon the subject vehicle by Newmar Corporation and/or its authorized representatives and agents in New Jersey and Colorado, and the place where the relationship of the parties arose is New Jersey because the warranty and other obligations of defendant were given to and received by Plaintiffs in New Jersey and defendant directly interacted with Plaintiffs in Colorado.

**IDENTIFICATION OF PARTIES**

5. Christina King and Stephen King are natural persons domiciled and residing in Colorado and are consumers and buyers within the meaning of applicable laws.

6. Defendant, Newmar Corporation ("Newmar"), was at all times relevant a corporation doing business in New Jersey and elsewhere and is the manufacturer of the subject RV that Plaintiffs acquired from Dylan's RV in New Jersey. Defendant has its principal place of business and domicile in and is a citizen of Indiana. Defendant was, at all times relevant, engaged in

the business of selling and servicing recreational motor vehicles through its authorized dealerships and agents, including Dylans RV, that it maintains in New Jersey and elsewhere.

7. The Plaintiff acquired the subject RV from Dylans RV in Sewell, New Jersey ("Dylans RV" or "Dealer"). At all times relevant, Dylans RV Center Limited Liability Company DBA Dylans RV, was a supplier, merchant and an authorized representative and agent of Newmar in New Jersey for sale and servicing of Newmar products in New Jersey. At all times relevant, Dylans RV was authorized by Newmar to act for it as its authorized agent and representative in New Jersey in all respects related to the sale of the vehicle involved in this case and the attempted performance of warranty repair and service work upon the subject new Newmar vehicle, and hundreds of other Newmar products sold by Dylans RV.

8. Upon information and belief, Plaintiff alleges that Defendant Newmar and Dylans RV entered into a retail sales and service agreement whereby Dylans RV agreed to allow Newmar to control its operations by contractual terms which required that:

a. Newmar would appoint Dylans RV as its authorized representative and agent for sales and service of Newmar in New Jersey;

b. Dylans RV was Newmar's select authorized retail seller of Newmar products in New Jersey;

c. Dylans RV was required by Newmar to work with and coordinate with Newmar to determine what product lines and stocking and sales quantity objectives would exist at Dylans RV and to complete a Newmar Stocking and Sales Objective form agreement which would bind Dylans RV to meet the objectives or accept financial penalties from Newmar;

d. work with Newmar to meet the state regulatory requirements for Dylans RV and other dealers, including the provision by Newmar and Dylans RV to jointly provide necessary documentation to show that it and any individual location was authorized to sell Newmar's products;

e. Dylans RV agreed with Newmar to allow Newmar to control Dylans RV's available inventory of Newmar products and to accept Newmar's discretionary decision to allocate the Newmar products that Dylans RV would be able to sell;

f. to comply with Newmar's basic minimum inventory of new Newmar recreational vehicle stock requirements or accept financial penalties from Newmar;

g. to permit Newmar to review the agreement with Dylans RV and Dylans RV annually;

h. to accept changes which Newmar would make to the required

Newmar product inventory levels Dylans RV was required to maintain for retail sale or accept financial penalties from Newmar;

I. to not sell Newmar products to a retail purchaser for export purposes or accept financial penalties from Newmar;

j. to allow Newmar to terminate the relationship with Dylans RV if Dylans RV did sell Newmar products which the purchaser exported;

k. to accept the charge back by Newmar to Dylans RV for any market support, sales incentives, or any further assistance programs of Newmar if Dylans RV submitted any warranty card to Newmar which contained a foreign address on it;

l. for Dylans RV to reimburse Newmar for any financial penalties or discount reversals incurred by Newmar for all unauthorized exports;

m. for Dylans RV to comply with Newmar accounting practices;

n. for Dylans RV to submit its annual financial statements to Newmar;

o. for Dylans RV to supply Newmar any other reports and records which Newmar might request;

p. to maintain on its premises and in its inventory of stock the Newmar flooring standards as dictated by Newmar or accept financial penalties from Newmar;

q. to maintain and keep available a minimum of two years of records that support the payments made by Newmar to Dylans RV for

warranty repairs and recalls that Dylans RV performs on behalf of and for Newmar;

r. to permit Newmar to make at any time during regular business hours, examinations and audits and to reproduce and take copies, of any of the accounts and records which Newmar required Dylans RV to keep and maintain;

s. to accept the discontinuance, change, or replacement of any Newmar product without notice and without choice;

t. to allow Newmar to sell directly to any government or agency without exception, even if they are located within the marketing area of Dylans RV and even if prior sales occurred through Dylans RV;

u. to promote and sell and deliver to Dylans RV's full potential the retail sale and service of Newmar products;

v. for Dylans RV to conduct advertising of Newmar products and participate in shows and exhibitions at the expense of Dylans RV;

w. to maintain a complete service shop and offer service to all Newmar product owners;

x. to carry in stock an inventory of parts and accessories for Newmar products in an amount that is in the discretion of Newmar;

y. for Dylans RV to purchase and maintain in good condition Dylans RV's tools and equipment including a range of non-optional tools

which Newmar may require Dylans RV to have at Dylans RV's expense;

z. to perform the Newmar such pre-delivery service as Newmar may require in relation to the retail sale by Dylans RV of Newmar products;

aa. to make post-delivery adjustments on Newmar products sold by Dylans RV, along with a large quantity of other terms and conditions on and business practices of how Dylans RV may operate its business, and by virtue of such, Dylans RV is the agent and/or general agent and/or agent with implied authority and/or agent with express authority and/or agent with apparent authority; and

bb. and in numerous other manners.

6. As this complaint is being filed, for at least ten years Newmar has engaged in substantial business activities in the state of New Jersey involving millions of dollars of goods and services that have been and/or are being advertised and sold in New Jersey, both by shipping into New Jersey and distributing in New Jersey its new motor vehicles and by its continuing substantial business of contracting with its New Jersey dealers for them to perform warranty repair and service work in New Jersey on Newmar's behalf at Newmar's authorized repair facilities located in New Jersey, including but not limited to Dylans RV. In fact, as this Complaint is being

filed, Dylans RV has about $2.2 million dollars worth of Newmar RV's which it is advertising for retail sale. In addition, upon information and belief, Dylans RV was paid over thousands of dollars for the warranty repairs that it performed for and with authorization by Newmar last year.

7. Presently Dylans RV alone has motor vehicles manufactured by defendant on its retail lots for sale, which defendant shipped to Dylans RV in New Jersey for the purpose of advertising and selling the subject motor vehicle to the public in New Jersey, and which have a total value of about $2,233,072. Defendant's continuing business activity with Dylans RV has been ongoing for a number of years.

8. Defendant's internet web site lists Dylans RV as its authorized retail seller and servicer of Newmar motor vehicles in New Jersey. Dylans RV is the only authorized Newmar representative and agent in the state of New Jersey where defendant engages regularly in sales and service of products it manufactures and distributes through its local authorized retail sales and service facilities, agents and authorized representatives.

**FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT**

9. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

10. This claim is for breach of warranty and/or contract of warranty by defendant in New Jersey and/or Colorado and/or Indiana.

11. Plaintiffs bring this action for monetary damages and equitable remedies because of serious and chronic defects that the subject RV has experienced and exhibits.

12. The RV is and has been inherently defective in materials, design, and/or workmanship and the defects appeared and arose during the term of Newmar Corporation's warranty shortly after Plaintiffs took delivery of the subject RV, and Newmar Corporation and its authorized representatives and agents have been unable to correct the defects after multiple opportunities and repair opportunities.

13. As a result of the above, and the allegations below, inter alia, defendant breached its warranty and/or contract of warranty to the injury of Plaintiffs.

14. At all times relevant, Dylans RV was a supplier and merchant and an authorized retail sales and service facility, agent and authorized representatives of defendant authorized to act for it in all respects related to retail sales and warranty repair attempts performed on the subject vehicle. Plaintiffs acquired the subject RV from Dylans RV.

15. At all times relevant, Transwest Truck Trailer RV was a supplier and merchant and an authorized retail sales and service facility, agent and authorized representatives of defendant authorized to act for it in all

respects related to warranty repair attempts performed on the subject vehicle. Repair attempts upon the subject RV were made by Transwest Truck Trailer RV.

16. Plaintiffs experienced repeated problems with various aspects of the RV including the material and workmanship provided and warranted by defendant.

17. On or about July 28, 2020 the parties entered into a consumer transaction, in that Plaintiffs agreed to acquire from the Dealer, the Dealer agreed to sell to Plaintiffs, under the terms of a contract and/or retail installment sales contract, and defendant agreed to warrant and/or contracted to warranty the vehicle to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, the goods being a certain 2020 Newmar New Aire 3543 recreational vehicle believed to bear VIN # 4UZACEFE5LCLX7434, and whose total purchase price was $343,969.54.

18. Plaintiffs acquired the vehicle in reliance on the existence of a written warranty and/or contract of warranty from Defendant and on advertising representations and/or warranties of Defendant.

19. An integral part of the purchase of the RV was the advertisements

and representations made to Plaintiffs and the public by Newmar Corporation.

20. Plaintiffs would not have purchased the subject RV but for the advertising and representations made by Newmar Corporation to induce Plaintiffs into making the purchase.

21. When Plaintiffs decided to buy a motorcoach they knew they wanted one that was built by a company with a good reputation for building quality and taking care of its customers, a coach with a desirable floor plan and that looked as good as it was built, and that it would be built right. Plaintiffs wanted an RV that was advertised to have and did have solid construction, excellent engineering, and solid reliability; a long lasting coach made by a company that had been in business a long time.

22. Defendant Newmar's sales brochure represented Newmar was "leading the way forward" by building coaches that go "above and beyond" ordinary coaches, one that was "built from the ground up" to give them luxury that was "anything but ordinary" and that would be a "joy to drive" and come from a company whose motto and way of construction was "compromise nothing" and that this RV model would be "everything you want" — and as the brochure

went on to say, this coach was "the best" or at least that is what it was represented to be. Plaintiffs would later find out these representations were not true.

23. The factory brochure promised Plaintiffs "The Newmar Customer Experience" would be "an unrivaled ownership experience" and implied it would be an experience that would be good. Plaintiffs' experience with this RV was miserable and not good at all. Represented to be quality from the start, this RV was not that. While defendant represented Plaintiffs would receive "rock solid warranty coverage" Plaintiffs never even got a copy of the warranty with the RV at all and the actual warranty coverage was not delivered as promised and but contained loopholes and limitations that were not disclosed prior to the purchase of the subject RV.

24. Any limitation on the Newmar Corporation express warranty is unconscionable pursuant to applicable Law. Specifically:

   a. If made, the limitation was made in a pre-printed adhesion contract for which the term could not be negotiated;

   b. If made, the limitation and/or disclaimer was the result of legal assistance to Newmar Corporation, which they each were able to purchase because of the relative advantages they

maintain over the Plaintiffs;

c. The substance of the bargain should not allow Newmar Corporation to sell a very expensive defective product and receive a large profit, while at the same time washing their hands of the product and leaving no reasonable recourse for Plaintiffs;

d. If made, the disclaimers and/or limitations are each a direct result of a superior bargaining position because of their relative sophistication and knowledge and/or is a calculated and intended method designed to attempt to escape liability for producing and distributing and selling a defective RV.

25. Pursuant to applicable law, Plaintiffs received an implied warranty that the product would be fit for its ordinary purpose and/or use. Furthermore,

a. These implied warranties were each not disclaimed or could not be disclaimed, or

b. In the alternative were each not properly disclaimed in that the disclaimer was not written so that a reasonable person ought to have noticed or comprehended same, specifically:

i. It was not written in all capitals;

ii. It was not in a different font or color; and

iii. It was not on the face of the retail installment contract and/or warranty. or

c. It was not conscionable pursuant to the Magnuson Moss Warranty Act and/or applicable law. Specifically:

i. If made, the disclaimer was made so in a pre-printed adhesion contract for which the term could not be negotiated;

ii. If made, the disclaimer was a result of legal assistance to Newmar Corporation and said entity was able to purchase the legal assistance because of its relative advantages it maintains over the Plaintiffs;

iii. Moreover, the substance of the bargain is such that Newmar Corporation should not be permitted to sell an expensive defective produce and to receive a large profit, while at the same time washing its hands of the product leaving no reasonable recourse for Plaintiffs;

iv. If made, the disclaimers and/or limitations are

each a direct result of a superior bargaining position because of the relative sophistication and knowledge and/or is a calculated and intended method designed to attempt to escape liability for producing and distributing and selling a defective RV.

26. The purpose of defendant's warranty was (a) to get the RV fixed within a reasonable amount of time and within a reasonable number of attempts if a defect arose, and (b) to give Plaintiffs confidence in the reliability and quality of the RV, and (c) to give Plaintiffs confidence in the defendant's representations about the subject vehicle and the vehicles defendant designed and built, and (d) to give Plaintiffs confidence in defendant itself as a responsible company that lived up to its representations, its word, and its warranties.

27. Defendant Newmar brags that it engineers and builds the "highest-quality RVs the world had ever seen" but this RV was not of that quality. Plaintiffs defects in the subject RV caused Plaintiffs to be stranded on the side of the road, with no response from Newmar's emergency line, being bounced back and forth between Newmar

and its authorized representative and agent of Newmar as to who could or would do proper repairs to the RV, which caused the canceling and/or ending of planned trips early because the RV was not working properly.

28. After acquiring the vehicle, Plaintiffs discovered that it did not conform to the representations of Defendant inasmuch as it developed continuing malfunctions, defects and problems.

29. Defendant Newmar promised Plaintiffs the Rv would provide "quality you can feel", but no one told Plaintiffs that in the little more than six months they have owned their RV, it would be out of service over six months worth of time for repair attempts on dozens of defects, many of which are still not fixed. While defendant represented that the RV was "loaded" with features and options and a long list of standard equipment, no one told Plaintiffs that it would get to the point where defects seemed like they were never-ending.

30. Plaintiffs have experienced almost two dozen of factory defects in material and workmanship. Defendant's authorized repair facilities' repair orders show that this coach was out of service about 2/3 of the time Plaintiffs owned it with repair orders showing more than

130 days in the shop over the course of about four different repair trips alone.

31. The chassis for the subject RV was built in August 2019. Plaintiffs bought the subject finished RV July 28, 2020. The quality level of both the chassis and the RV is reflected in the series of repair and recall notices that the chassis company and Newmar each announced.

32. On September 17, 2019, Newmar issued technical service bulletin 19V610 for structure defects in some 2020 Mountain Aire Rvs where the bedroom fascia header had the potential to fall unexpectedly.

33. On May 5, 2020, Newmar issued technical service bulletin 20V171 for equipment defects in several models of Newmar Rvs including the 2020 Mountain Aire Rvs announcing that the chassis manufacturer had decided that a defect relating to safety existed and was subject to NHTSA announcement 20v127, causing Newmar to issue the same announcement.

34. On June 10, 2020, Newmar issued technical service bulletin 554 for computer software defects in several models of Newmar Rvs including the 2020 Mountain Aire Rvs, because a “firmware”

update was needed on systems installed on some Rvs.

35. On June 30, 2020, Newmar issued an amended technical service bulletin 554TSB for backup camera defects related to technical service bulletin 554 from June 10 and several models of Newmar Rvs including the 2020 Mountain Aire Rvs, because of another "firmware" update that was needed on systems installed on some Rvs.

36. On August 30,2020, Newmar issued technical service bulletin recall 20v421 for electrical system safety defects as a result of a chassis announcement #20v404 from the chassis manufacturer involving several models of Newmar Rvs including the 2020 Mountain Aire Rvs.

37. On August 30, 2020, Newmar issued a damaged circuit board technical service bulletin recall 20v421 for exterior lighting safety defects as a result of a chassis announcement #20v404 from the chassis manufacturer involving several models of Newmar Rvs including the 2020 Mountain Aire.

38. The vehicle has been in for warranty and defect repair and service multiple times for a laundry list of defects, problems and malfunctions far exceeding what a reasonable person would expect

if the vehicle had been manufactured right in the first place or repaired right by defendants. The vehicle has been out of service by reason of repairs for an unreasonable number of days and a time far exceeding what a reasonable person would reasonably expect for the quality of which Defendant represented the product would be. The repair attempts and work was performed under warranties from Newmar Corporation at various times and dates since purchase.

39. The defects in the RV were substantial and existed in the materials and workmanship caused by defendant and included but are not limited to the following systems and/or parts: Back closet light, Dryer, Bedroom AC, Bedroom door hinge, Jacks leveling system, Right side couch, Key Fob, Cargo compartment light/sensor, Entry Door, “Ext Light” Battery Bay, “DEF” Fluid rack, Passenger side Front Awning, Inverter black soot, Backup Camera System Recall “TSB” 554; Check Engine Warning Light; Generator Exhaust, Traction Control, Left Headlight, Tire Pressure Monitoring System, Batteries, Shore Power, Air Conditioning ducting, “KBI” board for solenoid. Radio, Toiler “Touchpad”, and the Water valve, among other things.

40. Plaintiffs have been unable to use the vehicle in the expected, normal and customary manner because of the substantial defects and problems and malfunctions experienced with the subject RV and Plaintiffs' loss of confidence in the reliability of the subject RV and lost confidence in the ability of defendant to live up to its warranties and/or promises and/or representations about the RV.

41. Defendant was notified of defects and non-conformities in the vehicle and the authorized repair facility's failed repair attempts repeatedly prior to filing this case.

42. In all respects, Plaintiffs substantially if not completely performed their obligations under the RV's warranty from defendant and defendant did not perform its obligations, as set forth herein above and below.

43. Because of defendant's warranty and contract of warranty covered defects, Plaintiffs notified defendant and/or one of its authorized servicing representatives and agents of the numerous defects and on various dates delivered the motor coach into the possession of defendant and/or one of its authorized representatives and agents of Newmar at their cost and/or expense beginning shortly after the sale.

44. The RV was returned to Dylans RV, defendant's factory warranty authorized repair shop on August 1, 2020 for 1 day for an issue with the bedroom air conditioning system.

45. On August 25, 2020, the RV was taken to Transwest Truck Trailer RV in Frederick, Colorado defendant's factory warranty authorized repair shop for 8 days and 12 reported defects reported:

- Back closet light
- Dryer not heating
- Bedroom air conditioning
- Bedroom door off hinge
- Jacks not leveling properly
- Right side couch needs repaired
- Key fob battery
- Cargo compartment light/sensor
- Entry door not closing properly
- Exterior light battery bay inoperative
- DEF fluid rack rusted
- Passenger side front awning misaligned

46. On September 11, 2020, the RV was returned to Transwest Truck Trailer RV, defendant's factory warranty authorized repair shop, for another day and 2 reported defects:

- Soot on inverter
- Recall TSB 554

47. On October 21, 2020 the RV was again returned to Transwest Truck Trailer RV, defendant's factory warranty authorized repair shop, for an additional 113 days and list of 10 reported defects:

- Check engine light
- Generator exhaust loose
- Traction control light
- Left headlight out
- TPMS abnormal
- Lower radiator cover punctured
- SCR bracket bent
- Battery
- Shore power
- AC ducting

48. The subject RV was still in the shop when a new repair order was created for repairs needed on November 4, 2020.

49. The subject RV was still in the shop when a new repair order was created for repairs needed on November 23, 2020.

50. The subject RV was still in the shop when a new repair order was created for repairs needed on November 30, 2020.

51. The subject RV was still in the shop when a new repair order was created for repairs needed on January 20, 2021.

52. The subject RV came out of the defendant's factory warranty authorized repair shop, Transwest, on February 11 but the defects were not over with and the RV was returned to the same factory warranty authorized repair shop of defendant on February 17, 2021, for more repair attempts, where it remains with no repair work occurring for lack of parts as of the filing of this Complaint.

Five weeks later Plaintiffs are still being told that defendant's factory warranty authorized repair shop, Transwest, is still waiting on parts before they will make any repair attempts on the RV's never-ending defects in material and workmanship. Plaintiffs returned the RV this time with the following complaints and additional complaints to be determined:

- Check engine light
- Blown fuse for KBI board
- Radio being replaced, bad core unit
- Toiler touchpad bad
- Water valve bad

53. Plaintiffs had a number of telephone calls with defendant and its authorized warranty repair facilities and dealers and agents identified above, and/or other entities, for help with the RV and during.

54. In addition to the above phone calls, a series of written emails occurred between the parties.

55. After being in the repair shop multiple times and being out of service more than 130 days and counting in just over the first six months of ownership and accumulating more than 20 or more warranty-covered defects since its acquisition, Plaintiffs notified defendant that they wanted their money back but defendant would

not do that.

56. In spite of defendant's obligations, when Plaintiffs complained of the inability of defendant and its authorized warranty-repair facility to repair the vehicle as defendant promised, defendant did not repair or replace or repurchase the subject vehicle.

57. Prior to filing this case, including on October 19, 2020 and one or more other dates, Plaintiffs provided notice to defendant about its acts, omissions, and practices and failures to live up to its warranty and/or contract of warranty.

58. Instead of performing as represented, defendant did not repair the defects in the vehicle once and for all time. In short, the defects were not repaired, Plaintiffs lost all confidence in the reliability and quality of the RV, and Plaintiffs lost all confidence in defendant as a company.

59. As a result defendant breached its express and/or implied warranties and/or contract of warranty and committed one or more violations of the New Jersey Consumer Fraud Act.

60. As a result, defendant's warranty and/or contract of warranty failed of its essential purpose and any limitations contained within the warranty and/or contract of warranty are null and void and

Plaintiffs are entitled to all applicable legal and equitable remedies in law.

61. In addition, any limitations contained within the warranty and/or contract of warranty are null and void and without consideration and Plaintiffs are entitled to all applicable legal and equitable remedies in law.

62. Through its advertising and otherwise, Defendant represented that the recreational vehicles it built were fit for the purpose for which they were designed, that they are safe and suitable vehicles for their intended designed use, reliably operable for private transportation and Plaintiffs acquired the vehicle in reliance upon the belief that Defendant possessed a high degree of manufacturing skill and judgment and would live up to its warranty promises.

63. Through its advertising and otherwise, Defendant represented that the recreational vehicles which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used, and Plaintiffs relied on such, but the vehicle involved in this case was not of merchantable quality.

64. The malfunctions and defects in the vehicle severely and

substantially impaired its use and/or safety and/or value to Plaintiffs.

65. Defendant's failure to timely fix all of the vehicle's defects has caused Plaintiffs to lose confidence in the reliability of the subject motor vehicle and in the ability of defendant to repair the vehicle's defects.

66. Plaintiffs provided Defendant and/or one or more of its authorized dealers, representatives and agents with a reasonable opportunity to repair the vehicle but they have each neglected, failed, refused or otherwise been unable to do so within a reasonable amount of time or a reasonable number of attempts

67. As a result of the above facts, Defendant breached its warranties and/or contract of warranty and/or its representations with respect to the vehicle.

68. One or more of the defects and malfunctions in the vehicle were covered under the terms of defendant's warranties and/or contract of warranty, and defendant failed to repair the vehicle, thereby damaging the use and/or safety and/or value of the vehicle to Plaintiffs.

69. Defendant and/or one or more of its authorized dealers,

representatives and agents had notices of the breaches of the warranty and/or contract of warranty and the defective condition of the subject motor vehicle within a reasonable time.

70. Plaintiffs suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of Defendant's authorized representatives to repair or replace the vehicle or refund its price.

**SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT**

71. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

72. This claim is for breach of express and/or implied warranties and/or contract of warranties and/or defendant’s violation of its obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq, including but not limited to its obligations to comply with its warranties and/or contract and/or to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and its applicable regulations.

73. As a result of the above, among other things, defendant has breached its obligations under the Warranty Act and/or its applicable disclosure and/or other regulations.

74. As a result of the above, among other things, defendant breached its obligations to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and the applicable Code of Federal Regulations.

75. As a result of the above, inter alia, Plaintiffs were damaged and defendant is in violation of the Warranty Act.

**THIRD CLAIM: NEW JERSEY CONSUMER FRAUD ACT**

76. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

77. This claim is for violation of the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et seq. by Defendant.

78. Both before and after the sale of the subject RV to Plaintiffs, Defendant made one or more advertisements about the subject vehicle to induce directly or indirectly Plaintiffs to enter into an obligation and/or acquire title and interest in the subject RV.

79. The subject RV is goods and/or merchandise and the services related to it which defendant promised Plaintiffs were services that were offered directly or indirectly to the public for sale before and after the sale of the subject RV to Plaintiffs.

80. In the course of Plaintiffs' consumer transaction involving the

defendant's goods and merchandise, defendant committed an act or use or employed an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation or knowing concealment or suppression or omission of a material fact with intent that others, including Plaintiffs, rely upon such concealment, suppression or omission, in connection with the sale or advertisement of merchandise and/or with the subsequent performance of such as aforesaid, including but not limited to:

1. Representing that the subject of a consumer transaction has performance, characteristics, accessories, uses, or benefits it did not have and/or the supplier knows or should reasonably know that it is not
2. Representing that the subject of a consumer transaction is of a particular standard or quality when it is not and/or the supplier knows or should reasonably know that it is not
3. Representing that it would remedy defects in the subject vehicle and failing to do so
4. Representing that it would remedy defects in the subject vehicle and failing to do so within a reasonable amount of

time and/or within a reasonable number of attempts

5. Representing that defects have been repaired when in fact they were not

6. Knowingly distributing goods for retail sale to consumers that it knows or should know are defective without disclosing such and concealing or suppressing or omitting that fact with intent that others rely upon such

7. Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to be defective without disclosing such and concealing or suppressing or omitting that fact with intent that others rely upon such

8. Knowingly distributing goods for retail sale to consumers that it knows or should know will become defective after receipt by the retail seller and before purchase by the retail buyer without disclosing such and concealing or suppressing or omitting that fact with intent that others rely upon such

9. Knowingly distributing goods for retail sale to consumers that it knows or should know will become defective during the first year after purchase by the retail buyer without

disclosing such and concealing or suppressing or omitting that fact with intent that others rely upon such.

81. As a result of the above, inter alia, Defendant committed one or more violations of the New Jersey Consumer Fraud Act before, during or after a consumer transaction between one or both Plaintiffs and a supplier in relation to the subject RV.

**WHEREFORE**, judgment is demanded against defendant as deemed proper and lawful by the Court, cumulatively and/or alternatively as follows:

**PRAYER FOR RELIEF**

1. On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

2. On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

3. On the third claim, damages and/or recovery of refund, and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

## ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in the prayer above on any appropriate claim as proven by the evidence and allowed by law, all damages and/or statutory remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation which may be proven at trial;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date of acquiring the RV, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiffs demand trial by jury on all claims and issues.

/s/ Ronald L Burdge
RONALD L. BURDGE
Attorney for Plaintiffs
8250 Washington Village Drive
Dayton, OH 45458-1850
Telephone: 937.432.9500
Fax: 937.432.9503
Email: Ron@RvLemonLaw.com

Z:\data\King, Stephen\Core Pleadings\Core Complaint rb 032221.wpd